IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| SHON ASHBY and JHONIER ALONSO ROJAS HERRERA, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:18CV614 |
| UNITED STATES DEPARTMENT OF STATE, UNITED STATES DEPARTMENT OF JUSTICE, BUREAU OF CONSULAR AFFAIRS, DONALD J. TRUMP, MIKE POMPEO, CARL RISCH, JEFF SESSIONS, and STACEY I. YOUNG, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Now before this court are pro se Plaintiffs' motion for default judgment, (Doc. 7), and Federal Defendants' motion to dismiss for failure to state a claim.[1] (Doc. 10.) Plaintiffs have also filed numerous other motions, notices, and requests for production. For the reasons stated herein, the court finds that

---

[1] Plaintiffs' summons was issued as to all defendants, (see Doc. 4). Plaintiffs filed an affidavit of service, (Doc. 6), which is of some concern to this court as service was effected by mailing, but did not include any return receipts or evidence of proper service. (See Fed. R. Civ. P. 4(a)(1) (contents of summons) and 4(i)). Nevertheless, a notice of appearance was filed on behalf of "all Federal Defendants." (Doc. 8.) Because the named individual defendants are all federal employees, sued in their official capacity, (see Doc. 1 and Doc. 10), this court construes the motion to dismiss as filed on behalf of all defendants. This case will be dismissed in its entirety.

Plaintiffs' motion for default judgment should be denied, Defendants' motion to dismiss should be granted, Plaintiffs' claims should be dismissed, and Plaintiffs' miscellaneous other motions should be denied.

## I.    FACTUAL BACKGROUND AND PRIOR LITIGATION

Plaintiff Shon Ashby ("Ashby") is "a[n] American business owner" who "seeks . . . to train and educate, Plaintiff [Jhonier Alonso Rojas] Herrera, in the areas of business [and] religious training." (Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Resp.") (Doc. 14) ¶ 27.) Plaintiff Jhonier Alonso Rojas Herrera ("Herrera") is, apparently, a resident and citizen of Colombia and Ashby's "friend/religious partner." See Ashby v. U.S. Dep't of State, Docket No. 3:16-cv-00585-FDW-DCK, 2017 WL 1363323, at *1 (W.D.N.C. Apr. 12, 2017) ("Ashby I"). Ashby sponsored Herrera for a B-1 visa and paid for the application, "so that Plaintiff Herrera could come to the United States, as a student, and take part in Plaintiff Ashby's training and religious tenants [sic], etc." (Pls.' Resp. (Doc. 14) ¶ 32.) Herrera was allegedly denied a visa, "causing

. . . Plaintiff Ashby financial harm" and depriving Ashby of the opportunity to provide religious instruction to Herrera. (Id. ¶ 30.) Plaintiffs are proceeding pro se.

While this court does not necessarily agree fully with Defendants' contention that "Ashby appears to be reasserting claims and arguments raised in earlier litigation," (Defs.' Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") (Doc. 11) at 2), Plaintiffs' claims are at least closely related to an earlier lawsuit filed in the Western District of North Carolina. See Ashby I, 2017 WL 1363323, at *1 ("Plaintiff alleges that a consular office in Bogota, Columbia denied a nonimmigrant tourist visa to Plaintiff's friend/religious partner, Jhonier Alonso Rojas Herrera . . . , because Jhonier did not overcome the presumption of immigrant intent.") (internal punctuation omitted). The principal, and perhaps only, distinction between Ashby I and this case is not factual, but rather Plaintiffs' allegation in this case that the visa process is facially discriminatory based on age and that Herrera's visa adjudication therefore implicates the constitutional right of equal protection. In Ashby I, Ashby alleged that Herrera's visa application was reviewed "in an indifferent and reckless manner" and that this review "placed a substantial burden upon the Plaintiff's fundamental liberties." 2017 WL 1363323, at *1. It appears that Ashby is now challenging that very same visa denial on age discrimination and other grounds. (See Complaint ("Compl.") (Doc. 1) ¶¶ 5-7, 20.)

-3-

The district court in Ashby I concluded that Herrera's visa was properly denied, see 2017 WL 1363323, at *3, and that decision was promptly affirmed by the Fourth Circuit Court of Appeals, see Ashby v. U.S. Dep't of State, 697 F. App'x 219 (4th Cir. 2017). It appears to this court that Ashby should be collaterally estopped from again challenging the denial of Herrera's visa because he had a "full and fair opportunity to litigate the issue" in Ashby I and received a final judgment. See In re Microsoft Corp. Antitrust Litigation, 355 F.3d 322, 326 (4th Cir. 2004) (setting forth the test for collateral estoppel). This court, frankly, finds it both disrespectful to other litigants and wasteful of judicial resources that Ashby now seeks a "second bite at the apple" by bringing the same challenge under the guise of different constitutional protections.

Defendants have not argued that collateral estoppel applies. While aware of its authority to consider sua sponte whether collateral estoppel should bar the claims in this case, see, e.g., Eriline Co. S.A. v. Johnson, 440 F.3d 648, 655 (4th Cir. 2006), this court will nevertheless address the motion to dismiss and complaint on the merits.

## II.  **JURISDICTION AND VENUE**

This court has subject matter jurisdiction over Plaintiffs'
visa-related challenges because they arise under the United
States Constitution. 28 U.S.C. § 1331; see also Brown v.
Schlesinger, 365 F. Supp. 1204, 1206 (E.D. Va. 1973). When a
federal court has federal question jurisdiction over some
claims, it may exercise supplemental jurisdiction over all
claims that "form part of the same case or controversy." 28
U.S.C. § 1367; see also Hinson v. Norwest Fin. S.C., Inc., 239
F.3d 611, 616 (4th Cir. 2001). Claims are part of the same "case
or controversy" when they "derive from a common nucleus of
operative fact . . . such that [the plaintiff] would ordinarily
be expected to try them all in one judicial proceeding." United
Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). This court is
satisfied that the pendant state-law defamation claim against
Defendant Stacey I. Young ("Young") arises from the same nucleus
of operative fact — namely, the circumstances surrounding
Herrera's visa denial. Therefore, this court has supplemental
jurisdiction over the defamation claim.

Defendants argue that "Plaintiffs have alleged no facts
showing that venue is proper here in the Middle District of
North Carolina" and that the court is therefore free to transfer
this case to the Western District of North Carolina, where venue

is apparently proper because the Ashby I court considered the merits of Plaintiffs' prior claims. (Defs.' Br. (Doc. 11) at 16 n.10.)[2] This court agrees that the complaint fails to make any allegation that venue is proper in this judicial district. However, in the interest of liberally construing a pro se complaint and because Defendants have proceeded to argue that the claims should be dismissed on substantive legal grounds, this court will assume for argument that venue is proper in the Middle District of North Carolina.

## III. MOTION FOR DEFAULT JUDGMENT

This court may enter default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The Fourth Circuit has "repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits." Colleton Preparatory Acad., Inc. v. Hoover Universal, Inc., 616 F.3d 413, 417 (4th Cir. 2010). "A court must 'exercise sound judicial discretion' in deciding whether to enter default judgment, and 'the moving party is not entitled to default judgment as a

---

[2] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

-6-

matter of right.'" Reynolds Innovations, Inc. v. E-CigaretteDirect, LLC, 851 F. Supp. 2d 961, 962 (M.D.N.C. 2012) (quoting EMI April Music, Inc. v. White, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)).

Plaintiffs filed their complaint in this matter on July 12, 2018, and a summons issued to Defendants on that same day. (See Complaint ("Compl.") (Doc. 1); Doc. 4.) Plaintiffs then filed an affidavit of service, (see Doc. 6), on September 12, 2018, asserting that all Defendants had been served as of August 30, 2018.

Plaintiffs moved for a default judgment pursuant to Fed. R. Civ. P. 55 on October 10, 2018. (See Doc. 7.) Attorney Aaron S. Goldsmith then entered an appearance on behalf of Defendants on October 16, 2018, (Doc. 8), and on October 17,2018, filed both a motion to dismiss, (Doc. 10), and a response to the motion for default judgment, (Doc. 12). Plaintiffs were permitted to reply "within 14 days after service of the response," LR 7.3(h), which they failed to do. Instead, Plaintiffs filed a second motion for default judgment on November 20, 2018, (Doc. 24), to which Defendants responded, (Doc. 34), and Plaintiffs replied, (Doc. 37).

The second motion for default judgment does not appear to raise any new legal arguments related to a possible default by

-7-

Defendants, but rather addresses the merits of Plaintiffs'
claims. (See Doc. 24.) To the extent the second motion actually
asks for an entry of default against Defendants due to failure
to respond, it is duplicative of Plaintiffs' first motion. This
court finds that the second motion for default judgment, (Doc.
24), should be denied as moot. This court will therefore not
consider the briefing of that motion.

Plaintiffs argue in their first motion that "Defendants
were to respond by October 9th 2018," (Doc. 7 ¶ 3), and that a
default judgment is appropriate because "Defendants have failed
to respond to the Plaintiff's complaint, by the dates issued by
[the] Court." (Id. ¶ 6.) Defendants contend that they responded
by filing a motion to dismiss "within 60 days after service on
the United States attorney" for the judicial district where the
action was commenced, as required by Fed. R. Civ. P. 12(a)(2).
(Doc. 12 at 1.)

Plaintiffs' affidavit indicates that Matthew G.T. Martin,
United States Attorney for the Middle District of North
Carolina, was served on August 17, 2018. (Doc. 6 at 5.)
Therefore, pursuant to Rule 12(a)(2), Defendants had until
October 16, 2018, to respond. See, e.g., Treece v. Colvin, No.
1:14-CV-1077, 2016 WL 225698, at *3 (M.D.N.C. Jan. 19, 2016)
(explaining the 60-day rule for lawsuits against government

-8-

agencies). Defendants filed their motion to dismiss on
October 16, 2018, within the time permitted by the Federal
Rules.[3]

Even had Defendants failed to respond within the allotted
time, Fed. R. Civ. P. 55(d) imposes an additional evidentiary
requirement to obtain a default judgment against the United
States. The plaintiff must "establish[] a claim or right to
relief by evidence that satisfies the court." Fed. R. Civ. P.
55(d). The Rule 55(d) inquiry implicates the substance of
Plaintiffs' claims. Here, this court finds that Plaintiffs have
failed to put forward sufficient evidence at the current stage
of the litigation. Further, "courts have held that entry of
default judgment against the United States will not be based
simply on a failure to file an answer or responsive pleading."
Sun v. United States, 342 F. Supp. 2d 1120, 1124 (N.D. Ga.
2004). Even after a default is entered, courts will generally
set it aside if the government later appears and files a
responsive pleading. See Mason v. Lister, 562 F.2d 343, 345 (5th
Cir. 1977).

---

[3] Defendants' corrected motion to dismiss, (see Doc. 10),
filed on October 17, 2018, relates back to the original filing
date because it was permitted as a matter of course, corrected a
purely ministerial error, and relates to "the conduct,
transaction, or occurrence set out — or attempted to be set out
— in the original pleading." Fed. R. Civ. P. 15(c)(1)(B).

This court finds that Defendants have responded within the sixty-day period permitted by Fed. R. Civ. P. 12(a)(2) and that Plaintiffs' motion for default judgment should be denied.

## IV.   MOTION TO DISMISS

### A.   Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal punctuation omitted). In other words, the plaintiff must plead facts that "allow[] the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678.

When ruling on a motion to dismiss, this court must accept the complaint's factual allegations as true. Iqbal, 556 U.S. at 678. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted). Despite this deferential standard, a court will not accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [will] not suffice." Iqbal, 556 U.S. at 678.

-10-

The pleading standards are relaxed for pro se plaintiffs. See Estelle v. Gamble, 429 U.S. 97, 106 (1976) (stating that pro se complaints must be "liberally construed"); see also Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, pro se plaintiffs are still required to plead facts that fairly put the defendant on notice of the nature of the claims and "contain more than labels and conclusions." Giarratano v. Johnson, 521 F.3d 298, 304 & n.5 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

### B. Plaintiffs' Claims

This court interprets the pleadings in this case to allege four separate claims. First, Plaintiffs bring a facial challenge to the Foreign Affairs Manual ("FAM") regulations implementing the Student and Exchange Visitor Program that grants visas to foreign students for study in the United States. Specifically, the regulations acknowledge that a student is generally younger than the average visa applicant and thus is less likely to be able to demonstrate substantial concrete "ties" to his or her home country (such as property ownership, a spouse or children, and long-term employment), which are normally required to rebut the presumption of "immigrant intent." See 9 FAM 402.5-5(E)(1). Plaintiffs contend that the FAM regulations violate equal protection because they discriminate on the basis of age by

creating a stricter "immigrant intent" inquiry for older non-student visa applicants. (See Compl. (Doc. 1) ¶¶ 6-7; Pls.' Resp., Attach. Two (Doc. 14-1).)

Plaintiffs request an order relating to "Counselor officers in Bogota, Colombia." (Compl. (Doc. 1) ¶ 20.) However, Plaintiffs then assert in their response that they have not asked for "[j]udicial review of a counselor's visa denial." (Pls.' Resp. (Doc. 14) ¶¶ 9-10.) And Plaintiffs repeatedly refer to regulations that are "discriminat[ory] on [their] face." (See id. ¶ 17, Attach. Two.) Therefore, this court concludes that Plaintiffs intend to bring a facial challenge to the FAM regulations under the equal protection clause.

Second, Plaintiffs argue that the FAM regulations burden their right to religious expression under the free exercise clause and deny them equal treatment as compared to other religious groups and institutions. (Compl. (Doc. 1) ¶¶ 8-9.) As explained more fully in Plaintiffs' response, Plaintiffs contend that religiously-affiliated colleges such as Boston College and Liberty University receive unconstitutional benefits under the regulations because they sponsor only student visa applicants who are subject to a less-probing "immigrant intent" inquiry. (See Pls.' Resp. (Doc. 14) ¶ 30.) The court interprets this claim as a facial challenge under either the Free Exercise or

Equal Protection clause, alleging that the regulations impermissibly discriminate against certain religious beliefs while favoring others.

Third, by invoking Burwell v. Hobby Lobby Stores, Inc., 573 U.S. 682 (2014), (see Pls.' Resp. (Doc. 14) ¶¶ 31, 33), Plaintiffs have alleged a claim under the Religious Freedom Restoration Act, or RFRA. Specifically, Plaintiffs allege that the FAM regulations substantially burden their exercise of religion by denying Plaintiff Ashby the right "to train a nonimmigrant (Herrera) [in] his own religious tenants [sic] here in the United States." (Id. ¶ 32.)

Fourth, Plaintiffs attempt to state a claim against Young, a lawyer in the U.S. Department of Justice Office of Immigration Litigation who represented the U.S. Department of State and other defendants in Ashby I.[4] See 2017 WL 1363323, at *1. Plaintiffs allege that Young denied Plaintiffs due process of law by "plac[ing] a false statement in Federal Court." (Compl. (Doc. 1) ¶ 15.) In their response, Plaintiffs clarify that their claim against Young is grounded in state defamation law and is

---

[4] Plaintiffs further name numerous high-level government officials, including President Donald J. Trump and Secretary of State Mike Pompeo, as defendants. (See Compl. (Doc. 1) at 1.) As Defendants do not raise governmental immunity as a defense, this court will assume for argument that these Defendants are not immune from suit. The substantive analysis of Plaintiffs' visa denial claims is the same for all Defendants, other than Young.

based on an alleged statement by Young in the prior case in which Young suggested that "Ashby sought judicial review of a counselor's visa denial." (Pls.' Resp. (Doc. 14) at 25.)

### C. **Consular Non-reviewability**

Defendants assert that Plaintiffs lack standing under the doctrine of consular non-reviewability and that, even if Plaintiffs are not barred from proceeding by this doctrine, "they have failed to . . . demonstrate any harm traceable to" the FAM regulations. (Defs.' Br. (Doc. 11) at 14-15.)

This court acknowledges that Plaintiffs' request for an order prohibiting age discrimination only in the context of visa adjudications in Bogota, Colombia, (see Compl. (Doc. 1) ¶ 20), does raise some concern that Plaintiffs are attempting to disguise a challenge to the denial of Herrera's individual visa application as a facial challenge to the entire policy. Plaintiffs may not challenge an individual visa denial without asserting a broader constitutional violation, because the determination of whether to grant or deny entry to an alien is "so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." Harisiades v. Shaughnessy, 342 U.S. 580, 589 (1952); see also Lem Moon Sing v. United States, 158 U.S. 538, 547 (1895) ("The power of congress to exclude aliens altogether

from the United States, or to prescribe the terms and conditions upon which they may come to this country, and to have its declared policy in that regard enforced exclusively through executive officers, without judicial intervention, is settled by our previous adjudications."); Li Hing of Hong Kong, Inc. v. Levin, 800 F.2d 970, 971 (9th Cir. 1986) (holding that an alien's lawsuit challenging the denial of his visa application was non-reviewable and subject to dismissal).

However, consular non-reviewability does not mean that any claim premised upon a visa denial is entirely beyond the reach of the federal courts. Rather, when an American plaintiff alleges a constitutional violation related to an alien's visa denial, courts will perform a limited review to confirm that "the Executive exercise[d its] power negatively on the basis of a facially legitimate and bona fide reason, . . . [and] will neither look behind the exercise of that discretion, nor test it by balancing its justification against the [constitutional] interests of those who seek personal communication with the applicant." Kleindienst v. Mandel, 408 U.S. 753, 770 (1972); see also Morfin v. Tillerson, 851 F.3d 710, 713-14 (7th Cir.), cert. denied, ____ U.S. ____, 138 S. Ct. 380 (2017); Am. Acad. of Religion v. Napolitano, 573 F.3d 115, 125 (2d Cir. 2009); Bustamante v. Mukasey, 531 F.3d 1059, 1062 (9th Cir. 2008)

("Joining the First, Second, and D.C. Circuits, we hold that under Mandel, a U.S. citizen raising a constitutional challenge to the denial of a visa is entitled to a limited judicial inquiry regarding the reason for the decision."); Adams v. Baker, 909 F.2d 643, 650 (1st Cir. 1990); Udugampola v. Jacobs, 795 F. Supp. 2d 96, 103 (D.D.C. 2011) (collecting cases).

Plaintiffs' claims in this case are almost identical to those brought in Mandel.[5] There, a Belgian citizen and Marxist scholar who intended to speak at various colleges in the U.S. was refused a visa. See Mandel, 408 U.S. at 756–57. The "persons who invited Mandel to speak at universities and other forums in the United States or who expected to participate in colloquia with him" sued, claiming (among other allegations) that the

---

[5] This court generally agrees with the Second Circuit's rejection of the government's argument in Napolitano that Mandel does not apply to a visa denial "because Mandel reviewed the Attorney General's discretionary decision not to waive an alien's inadmissibility, rather than the consular officer's threshold decision that the alien was inadmissible." Napolitano, 573 F.3d at 123 (footnote omitted). The Department of State recommended that the I.N.S. waive Ernest Mandel's ineligibility and admit him; it was the refusal to follow this waiver recommendation that the plaintiffs in Mandel sought to contest. See Mandel, 408 U.S. at 759. While the Supreme Court's holding might be read as limited to waiver decisions, "[i]t seems counterintuitive to review a cabinet officer's discretionary decision, but not a consular officer's decision as to statutory ineligibility." Napolitano, 573 F.3d at 125. Further, the overwhelming judicial approach since Mandel has been to review visa denials under the same standard. Id. at 124; see also Bustamante, 531 F.3d at 1062 n.1.

statutes governing the visa adjudication process both (1) violated their First Amendment rights by "prevent[ing] them from hearing and meeting with Mandel in person for discussions," and (2) violated the Equal Protection Clause by treating "leftist" and "rightist" visa applicants differently. Id. at 759–60. The Court reviewed these claims only to determine whether the reason identified by the government for denying Mandel's visa — that Mandel had engaged in activities that violated the terms of his visa during a prior visit to the United States — was "facially legitimate and bona fide," and concluded that it was. Id. at 759, 770. Courts have applied Mandel to challenges involving a variety of constitutional rights, and "[t]he analysis does not differ depending on the right that is alleged to have been impinged." Int'l Refugee Assistance Project v. Trump, 373 F. Supp. 3d 650, 670 (D. Md. 2019) ("IRAP III").

This court finds that Mandel review applies only to a constitutional violation alleged by a United States citizen who either sponsors the visa application or alleges some protected

interest in the applicant's presence.[6] See Trump v. Hawaii, 585 U.S. ____, 138 S. Ct. 2392, 2419 (2018); Bustamante, 531 F.3d at 1062 (applying Mandel review when presented with a procedural due process claim by a U.S. citizen). On the other hand, an alien seeking admission may not bring such a challenge because that alien "has no constitutional rights regarding his application." Landon v. Plasencia, 459 U.S. 21, 32 (1982); see also Burrafato v. U.S. Dep't of State, 523 F.2d 554, 556–57 (2d Cir. 1975) ("The significant distinguishing feature of the instant case is that no constitutional rights of American citizens over which a federal court would have jurisdiction are implicated here.") (internal punctuation omitted). Therefore, this court finds that any claims by Herrera are barred by the doctrine of consular non-reviewability and that those claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

Ashby, however, is a U.S. citizen and thus may potentially bring a Mandel challenge to Herrera's visa adjudication process.

---

[6] There may be a colorable argument that consular non-reviewability precludes even the limited Mandel review in cases where a constitutional challenge is used only as a mechanism to challenge an underlying visa adjudication. However, the cases that apply this approach either (a) do not involve a facial challenge, see Ben-Issa v. Reagan, 645 F. Supp. 1556, 1558–59 (W.D. Mich. 1986), or (b) proceed to examine the merits of any constitutional claim before dismissing that claim, see Ventura-Escamilla v. I.N.S., 647 F.2d 28, 32 (9th Cir. 1981) (evaluating vagueness a challenge to FAM regulations). Therefore, the court finds this case should be examined under Mandel.

However, the legal analysis of Ashby's claim will be limited to whether the government provided a facially legitimate and bona fide reason for the visa denial. This court will first evaluate Ashby's standing to contest the constitutionality of the visa process as it relates to Herrera's denial. Then, if standing exists, the court will proceed to evaluate whether Ashby has plausibly alleged a non-legitimate or bad-faith reason for the denial.

### D. <u>Standing</u>

#### 1. <u>Legal Framework</u>

The federal judicial power extends only to cases or controversies within the scope of Article III of the United States Constitution. <u>See</u> U.S. Const. art. III, § 2. To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc. v. Robins</u>, 578 U.S. ____, ____, 136 S. Ct. 1540, 1547 (2016). Stated differently, "[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." <u>Allen v. Wright</u>, 468 U.S. 737, 751 (1984), <u>abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.</u>, 572 U.S. 118 (2014).

First, the plaintiff must have either suffered an injury or be in imminent fear of an injury. "A plaintiff who challenges a statute must demonstrate a realistic danger of sustaining a direct injury as a result of the statute's operation or enforcement." Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979). That injury must be "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and punctuation omitted). Plaintiffs generally may challenge alleged violations prospectively, provided that "the threatened injury is real, immediate, and direct." Davis v. Fed. Election Comm'n, 554 U.S. 724, 734 (2008). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

Second, the injury must be "fairly traceable" to the defendant's conduct. This does not mean that the plaintiff must prove to an absolute certainty that the defendant's actions caused or are likely to cause injury; rather the "plaintiffs need only show that there is a substantial likelihood that defendant's conduct caused plaintiffs' harm." Pub. Interest Research Grp. of N.J., Inc. v. Powell Duffryn Terminals Inc.,

913 F.2d 64, 72 (3d Cir. 1990) (quoting Duke Power Co. v.
Carolina Envtl. Study Grp., Inc., 438 U.S. 59, 75 n.20 (1978))
(internal punctuation omitted). While this standard excludes any
injury that is "the result of the independent action of some
third party not before the court, [it] does not exclude injury
produced by determinative or coercive effect upon the action of
someone else." Bennett v. Spear, 520 U.S. 154, 169 (1997)
(quoting Lujan, 504 U.S. at 560-61).

Third and finally, the law requires that it be "likely, as
opposed to merely speculative, that the injury will be redressed
by a favorable decision" from the court. Friends of the Earth,
Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 181
(2000). This requirement "examines the causal connection between
the alleged injury and the judicial relief requested" and asks
whether a judicial decision granting the requested relief will
alleviate plaintiffs' alleged injury. See Allen, 468 U.S. at 753
n.19 (explaining the distinction between the "fairly traceable"
and "redressable" components of standing).

2.  **Analysis**

Defendants argue that "Ashby lacks any constitutional
interest in the denial of a visa to his friend, Herrera — with
whom he shares no familial connection — and therefore cannot
seek even limited judicial review over the denial." (Defs.' Br.

(Doc. 11) at 4.) Additionally, Defendants contend that Ashby has failed to allege an injury-in-fact and that Plaintiffs "have failed to meet their burden of establishing standing or demonstrate any harm traceable to these provisions of the Foreign Affairs Manual." (Id. at 14-15.)

While the Supreme Court in Mandel did not directly address the standing of Mandel's American friends and patrons, the lower court found standing due to "[t]he special relation of plaintiffs to Mandel's projected visit." See Mandel v. Mitchell, 325 F. Supp. 620, 632 (E.D.N.Y. 1971) ("Here the plaintiffs other than Mandel are directly involved with Mandel's entry because they have invited him, and they expect to participate in meeting with him or expect to be among his auditors. No more is required to establish their standing."), rev'd sub nom. Kleindienst v. Mandel, 408 U.S. 753 (1972). This court reads Kerry v. Din, 576 U.S. ____, ____, 135 S. Ct. 2128, 2138 (2015), as generally consistent with the standing analysis in Mandel v. Mitchell. In light of this case law and because the complaint is subject to dismissal on other grounds, this court will assume without deciding that Ashby has standing to assert a limited constitutional challenge to the denial of Herrera's visa.[7]

---

[7] As previously discussed, Ashby's constitutional challenges to the visa adjudication process — though grounded in different

**E.** *Mandel* **Analysis**

The next question is whether the government has put forth a "facially legitimate and bona fide" reason for denying Herrera's visa. Defendants identify Section 1184(b) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1184(b), as the statutory basis for denial. (See Defs.' Br. (Doc. 11) at 13–14.) In other words, Defendants assert that they "provided Herrera with a facially legitimate bona fide reason for the denial": Herrera failed to rebut the presumption that he intended to immigrate to the United States, was properly classified as an immigrant, and was denied a nonimmigrant visa on that basis. (Id. (internal punctuation omitted).)

The limited <u>Mandel</u> inquiry asks only whether the reason provided is "facially legitimate and bona fide."[8] The inquiry does <u>not</u> look behind the proffered reason or attempt to discern any ulterior motive. See <u>Napolitano</u>, 573 F.3d at 137 ("We

_____

legal protections — are evaluated under the same standard. <u>See</u> <u>IRAP III</u>, 373 F. Supp. 3d at 670.

[8] <u>See also</u> <u>Cardenas v. United States</u>, 826 F.3d 1164, 1172 (9th <u>Cir.</u> 2016) ("Under the <u>Din</u> concurrence, the facially legitimate and bona fide reason test has two components. First, the consular officer must deny the visa under a valid statute of inadmissibility. Second, the consular officer must cite an admissibility statute that specifies discrete factual predicates the consular officer must find to exist before denying a visa, or there must be a fact in the record that provides at least a facial connection to the statutory ground of inadmissibility.") (internal punctuation omitted); <u>Int'l Refugee Assistance Project v. Trump</u>, 883 F.3d 233, 263–64 (4th Cir. 2018) ("<u>IRAP I</u>").

conclude that we have to take literally the statement in Mandel that courts may not look behind exclusion decisions, . . . at least in the absence of a well supported allegation of bad faith"); Bustamante, 531 F.3d at 1062 ("This is plainly a facially legitimate reason, as it is a statutory basis for inadmissibility."). The reason provided in this case is of course facially legitimate, because the INA expressly provides that applicants who fail to convince the consular officer that they are "entitled to nonimmigrant status under Section 1101(a)(15) of this title" are classified as immigrants and thus ineligible to receive admission under a nonimmigrant visa. See 8 U.S.C. § 1184(b). As the district court correctly observed in Ashby I, "the decision to deny Jhonier's visa easily qualifies as facially legitimate because it is based on Section 1184(b) of the INA." 2017 WL 1363323, at *3. Ashby has provided nothing to rebut that finding.

As to the "bona fide" prong, Justice Kennedy's Din concurrence (the holding of the court pursuant to Marks v. United States, 430 U.S. 188, 193 (1977)) suggests that "an affirmative showing of bad faith on the part of the consular officer" is required for the court to undertake any substantive review. Din, 135 S. Ct. at 2141 (Kennedy, J., concurring in the judgment). And the two circuit courts to directly consider the

question have found that a plausible allegation of bad faith by the consular officer is an essential element of any <u>Mandel</u> claim contesting the bona fide nature of the determination.[9] <u>See Napolitano</u>, 573 F.3d at 137; <u>Bustamante</u>, 531 F.3d at 1062–63 ("[T]he Bustamantes' allegation that <em>Jose</em> was asked to become an informant in exchange for immigration benefits fails to allege bad faith; if anything, it reflects the official's sincere belief . . . ."). Here, Plaintiffs seem to agree that the consular official applied the law and regulations <u>correctly</u> based upon the information provided; they only assert that the regulations themselves are discriminatory.

---

[9] While this court appreciates the distinction in the case law between facial legitimacy and a bona fide rationale for denial, these two concepts can also come into conflict with one another. Specifically, <u>Mandel</u>'s promise that "courts will [not] look behind the exercise of that discretion" is plainly inapplicable when a plaintiff has plausibly alleged bad faith. In that event, as Justice Kennedy explains, a court <u>would</u> in fact look behind the stated rationale to determine its legitimacy. <u>Din</u>, 135 S. Ct. at 2141 (Kennedy, J., concurring in the judgment). This second step in the analysis has created obstacles to applying <u>Mandel</u> in a uniform manner; specifically, it has spurred disputes regarding how broadly courts may search for evidence of bad faith. <u>See</u> <u>IRAP I</u>, 883 F.3d at 364 (Niemeyer, J., dissenting) ("[R]ather than determining <u>from the face of the Proclamation</u> whether the reasons given for the entry restrictions were legitimate and bona fide, which would preclude a look behind it for extrinsic evidence of bad faith, the court looked behind it <u>first</u> to conclude that the Proclamation was not bona fide.") (internal punctuation omitted), <u>judgment vacated by Int'l Refugee Assistance Project v. Trump</u>, ____ U.S. ____, 138 S. Ct. 2710 (2018) ("<u>IRAP II</u>").

Courts have generally interpreted the "bona fide" prong of the Mandel standard to require a rudimentary factual showing that the alien was validly excluded for the stated reason. See Cardenas, 826 F.3d at 1172 (stating that the consular officer relied on "the belief that Mora was a gang associate with ties to the Sureno gang" (footnote omitted)); Napolitano, 573 F.3d at 117 ("The Government contends that the visa was properly rejected on the ground that Ramadan's contributions to a charity, [ASP], which provided some financial support to Hamas, rendered him inadmissible."). However, this court finds it appropriate to require such a showing only where the consular officer makes an affirmative determination that the alien falls within a specific prohibited category based on certain evidence. Here, on the contrary, the lack of evidence that Herrera intended to return to Colombia supported his exclusion. Ashby thus does not plausibly allege bad faith by the consular officer who denied Herrera's visa.

Because Defendants have provided a facially legitimate and bona fide statutory rationale for excluding Herrera, Ashby fails to plausibly state a Mandel challenge to the visa adjudication process under either the Equal Protection Clause or the First Amendment. Those claims will be dismissed pursuant to Rule 12(b)(6).

**F.   Rational Basis Review**

Even assuming for argument that Ashby's constitutional claims are not limited by the holding in <u>Mandel</u>, Ashby has failed to plead viable claims under either the Equal Protection Clause or the First Amendment.[10] As to the age discrimination claim, age is not a suspect class and an age classification must be upheld when it is rationally related to a legitimate state interest. <u>See</u> <u>Gregory v. Ashcroft</u>, 501 U.S. 452, 470–71 (1991); <u>Mass. Bd. of Retirement v. Murgia</u>, 427 U.S. 307, 313 (1976); <u>Hatten v. Rains</u>, 854 F.2d 687, 690–91 (5th Cir. 1988). The challenged FAM regulations appear easily justified by a

_____

[10] Based on the Supreme Court's approach in <u>Hawaii v. Trump</u>, the next step in the analysis after <u>Mandel</u> is to evaluate the substantive constitutionality of the contested policy. <u>See</u> <u>Hawaii v. Trump</u>, 138 S. Ct. at 2420 ("A conventional application of <u>Mandel</u>, asking only whether the policy is facially legitimate and bona fide, would put an end to our review. But the Government has suggested that it may be appropriate here for the inquiry to extend beyond the facial neutrality of the order."). Due to the government's concession in that case, the Court proceeded to apply rational basis review. The majority and dissent disagreed about the correct standard of review, <u>compare</u> <u>id.</u> at 2420, <u>with</u> <u>id.</u> at 2441, with the dissent arguing that a heightened standard was appropriate due to the proclamation's allegedly discriminatory purpose. While the decision here does not require anything beyond a simple application of <u>Mandel</u>, this court will proceed to briefly explain why Ashby's claims also fail under rational basis review.

legitimate state interest in facilitating cross-cultural exchange.

The religion-based equal protection claim also is not plausibly alleged because the FAM regulations are facially neutral regarding religion.[11] In order to challenge a facially neutral law under the equal protection clause, a plaintiff must show that the law has both a discriminatory impact <u>and</u> a discriminatory purpose or intent "to disapprove of a particular religion or of religion in general." <u>See</u> <u>Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah</u>, 508 U.S. 520, 531–32 (1993) ("[O]ur cases establish the general proposition that a law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice."). While Ashby might have plausibly alleged a disparate impact in favor of religious institutions, he fails to plausibly allege that any law or regulation is religiously-targeted.

---

[11] Ashby provides little guidance as to the specific laws or regulations that allegedly favor applicants sponsored by religious colleges over other visa applicants. This court has no trouble concluding, however, that any such law or program would, at least facially, merely treat college-sponsored applicants differently from non-college-sponsored applicants (without regard to religion). Ashby has not identified any section of the INA or FAM regulations that refers to religion specifically.

## G.  **RFRA Claim**

Plaintiffs' RFRA claim is grounded in federal statute, rather than the U.S. Constitution. As an initial matter, because Plaintiffs' RFRA claim ultimately seeks to challenge the denial of Herrera's visa application, (see Pls.' Resp. (Doc. 14) ¶ 34 ("Nor should Plaintiff['s] student Herrera, be unfairly excluded and treated differently")), that claim is barred by consular non-reviewability even if re-cast as a claim under RFRA. See, e.g., Chun v. Powell, 223 F. Supp. 2d 204, 206-07 (D.D.C. 2002) (collecting cases, noting that "[s]uch attempts to manufacture subject matter jurisdiction by recasting a complaint have consistently been rejected by the courts").

Even if not barred by that doctrine, RFRA requires at least a plausible allegation that the government has substantially burdened the exercise of religion. See 42 U.S.C. § 2000bb-1(a). A substantial burden involves some form of government coercion. See, e.g., Fazaga v. Fed. Bureau of Investigation, 916 F.3d 1202, 1247 (9th Cir. 2019); Real Alts., Inc. v. Sec'y Dep't of Health & Human Servs., 867 F.3d 338, 358 (3d Cir. 2017); Lovelace v. Lee, 472 F.3d 174, 187 (4th Cir. 2006) (defining "substantial burden" as "one that puts substantial pressure on an adherent to modify his behavior and to violate his beliefs")

(quoting Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 718 (1981)) (internal punctuation omitted).

Here, this court will assume for argument that Plaintiffs have alleged a sincere religious belief. See Hobby Lobby, 573 U.S. at 725 ("[I]t is not for us to say that their religious beliefs are mistaken or insubstantial."). However, Plaintiffs have not alleged government coercion of any kind, nor has the government pressured Plaintiffs to alter their behavior in any way. See Lyng v. Nw. Indian Cemetery Protective Ass'n, 485 U.S. 439, 449 (1988) ("In neither case, however, would the affected individuals be coerced by the Government's action into violating their religious beliefs; nor would either governmental action penalize religious activity."). Rather, the government has merely refused to grant a requested discretionary benefit. Plaintiffs are free to carry on practicing religion under the status quo without any government interference.

Additionally, "Plaintiffs' allegations must . . . show an actual incompatibility between their religious beliefs and the conduct at issue." New Doe Child #1 v. Congress, 891 F.3d 578, 587 (6th Cir. 2018). Plaintiffs make no factual allegations describing what their religion is, why Herrera's presence in the United States is necessary to practice that religion, or how Herrera might enable Ashby to achieve some specific religious

objective or participate in any religious ritual. In other words, Plaintiffs do not allege any specific incompatibility between Herrera's exclusion and their religious exercise. The complaint only asserts in conclusory fashion that Ashby was "denied equal religious association and equal religious assembly" because he could not train Herrera. (Pls.' Resp. (Doc. 14) ¶ 32.) While Ashby may have a sincere desire to train Herrera on religious topics, this desire does not itself make Herrera's presence <u>necessary</u> to Ashby's religious exercise. Because Plaintiffs lack standing and fail to plausibly allege a substantial burden that prevents or inhibits them from practicing their religion, the RFRA claim will be dismissed.

### H. <u>Defamation Claim</u>

Plaintiffs' defamation claim against Young appears to be limited to an allegation that Young "placed a false statement in Federal Court" by mischaracterizing Plaintiffs' position in the <u>Ashby I</u> case. (Compl. (Doc. 1) ¶ 15; Pls.' Resp. (Doc. 14) ¶ 14.) Specifically, Plaintiffs allege that Young made false statements in the motion to dismiss that she filed in <u>Ashby I</u>. (<u>See</u> Doc. 19-1.)

The statements Plaintiffs have identified are legal arguments about the substantive merits of the claims in <u>Ashby I</u>. Those statements were clearly related to the subject matter of

that litigation and Young, as a lawyer in that litigation, is absolutely immune to civil liability for making those statements. See Burns v. Reed, 500 U.S. 478, 490-92 (1991) (noting that "absolute immunity for this function serves the policy of protecting the judicial process"); Imbler v. Pachtman, 424 U.S. 409, 424-31 (1976) (recognizing the absolute civil immunity of prosecutors for official actions, observing that "[t]he public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages"); Nero v. Mosby, 890 F.3d 106, 117-18 (4th Cir. 2018) (stating that a prosecutor enjoys absolute immunity for "advocative functions" such as when he "prepares and files charging documents").

Therefore, this court finds that all claims against Young should be dismissed pursuant to Rule 12(b)(6).

## V.    MISCELLANEOUS MOTIONS

In addition to the motions for default judgment discussed above and their response to Defendants' motion to dismiss, Plaintiffs have made numerous additional filings in this case. This court initially notes that many of these documents relate to the same central issue: Plaintiffs contend that they are not seeking review of a consular officer's visa denial and

strenuously object to Defendants characterizing their claims in that manner. (See, e.g., Docs. 17, 19.)

Under the Federal Rules of Civil Procedure, Plaintiffs were permitted to amend their complaint as a matter of course within twenty-one days after Defendants filed their motion to dismiss. See Fed. R. Civ. P. 15(a)(1). This court construes the following motions as motions to amend the complaint within the allotted time: Docs. 15, 16, and 19. These motions will be granted because they were permitted by the Federal Rules, and this court has considered the substance of those motions in its ruling. Plaintiffs also seek to add Defendants' counsel, Aaron Goldsmith ("Goldsmith"), as a party and sue Goldsmith for defamation based on "LIE and FALSE statement [sic]" allegedly made in Defendants' motion to dismiss. (Doc. 18 at 1-2.) As described previously, Goldsmith is absolutely immune from civil liability for any official advocative function performed in connection with this case. Therefore, this court finds that the claim against Goldsmith is futile and Doc. 18 will be denied.

This court construes Docs. 21, 32, 36, and 41 as additional motions to amend the complaint, specifically to add claims relating to an R-Visa application made by EMETchurch (a religious organization formed by Ashby) on behalf of Herrera. (See, e.g., Doc. 41 at 4-5.) Plaintiffs' complaint, however,

relates only to "F-1, M-1, J-1 nonimmigrant visa[s]," (Compl. (Doc. 1) ¶ 6), and Plaintiffs did not mention an R-Visa application until November 13, 2018 (over twenty-one days after Defendants moved to dismiss the complaint). The motions are untimely under Fed. R. Civ. P. 15(a)(1)(B) and wholly irrelevant to the original claims. These motions will be denied.

Plaintiffs have further moved for this court to order Defendants to produce certain documents related to the visa adjudication process. (See Docs. 17, 20.) Because this court has proceeded to the merits and finds that Plaintiffs' claims should be dismissed, these motions will be denied as moot. Plaintiffs' motion to stay proceedings or defer hearings during the month of May, (Doc. 38), is no longer applicable and will also be denied as moot.

In Doc. 35, Plaintiffs seek a court order related to the defamation claim against Young and possible claims against other DOJ attorneys. Any such claim is futile as described herein, and this motion will therefore be denied. In Doc. 39, Plaintiffs request an order compelling current and former North Carolina congressmen to provide a report to this court regarding application of the "immigrant intent" standard. The requested order would violate the separation of powers and the motion will be denied for that reason. See Trimble v. Johnston, 173 F. Supp.

651, 653 (D.D.C. 1959) ("It is no part of the judicial function to supervise or control the business of the executive or legislative departments of the Government. Otherwise the judiciary, instead of being one of three coordinate branches, would be supreme over the other two.").

This court finds Docs. 31, 33, 40, 42 and 43 substantially duplicative of the arguments in Plaintiffs' response to the motion to dismiss and both untimely and improper under the Federal Rules. These motions will therefore be denied.

Ashby has now filed two cases asserting substantially the same claims in two different judicial districts. Plaintiff cannot continue to use the federal court system for rolling consideration of the same visa-related grievances. Defendants have not moved to dismiss the complaint with prejudice. However, given the similarities between this case and Ashby I as observed in this order, the court has seriously considered whether to dismiss the claims with prejudice sua sponte. Cf. Curley v. Perry, 246 F.3d 1278, 1283-84 (10th Cir. 2001). Although the denial of a new visa application might lead to a meritorious claim, this court cautions Plaintiff against: (1) filing any new lawsuit based on the same events underlying this case; or (2) filing untimely or legally improper motions in any future

judicial proceeding; specifically, any motion that attempts to sue a government lawyer for making legal arguments.

## VI.  <u>CONCLUSION</u>

For the reasons stated herein, the court finds that Plaintiffs' motion for default judgment should be denied, Defendants' motion to dismiss should be granted, and the claims should be dismissed.

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Default Judgment, (Doc. 7), is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Default Judgment, (Doc. 24), is **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiffs' motions filed as Doc. 15, Doc. 16, and Doc. 19 are construed as motions to amend the complaint and are **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss, (Doc. 10), is **GRANTED** and this case is dismissed in its entirety.

**IT IS FURTHER ORDERED** that the claims in the complaint, as amended, are **DISMISSED**, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

**IT IS FURTHER ORDERED** that Plaintiffs' motions filed as Doc. 17, Doc. 20, and Doc. 38 are **DENIED AS MOOT.**

**IT IS FURTHER ORDERED** that Plaintiffs' motions filed as Doc. 18, Doc. 21, Doc. 31, Doc. 32, Doc. 33, Doc. 35, Doc. 36, Doc. 39, Doc. 40, Doc. 41, Doc. 42, and Doc. 43 are **DENIED.**

A judgment dismissing this action will be entered contemporaneously with this Memorandum Opinion and Order.

This the 17th day of September, 2019.

_William L. Osteen, Jr._
United States District Judge